In the District Court of the United States
District of Delaware

Daniel R. Cousins #425626              )
Movant    D.O.B. 7-28-70               )
                                       )         No.    05-212
        v.                             )
                                       )
                                       )
Thomas Carroll                         )
Warden D.C.C.                          )

ORIGINAL

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Memorandum of Law in Support of Movant's
motion for Habeas Corpus Review pursuant to
28 U.S.C. 2254.

Respectfully Submitted,

Daniel R Cousins

Daniel Ray Cousins #425626
1181 Paddock Rd
Smyrna, Del, 19977

Date: April 7, 2005

Table of Citations

U.S. v. Binder    769 F.ed .595, 600

Benge v. State    754 A.2d 891

Blackburger v. U.S. 52 S.ct. 180

Brown v. Ohio   53 Led 2d 187

Chapman v. California  386 US 18

Crandell v Bunnell  144 F.supp. 1213

Feleke v. State   620 A.2d 222

Francisco Succe v. U.S.  869 F.2d 499

Gideon v Wainwright   83 S.ct. 792

Hughes v. State   437 A.2d 559

Hunter v. Delaware  Del.Sup. Ct. 239, 2000

Jardell Co. Inc. v. Hughes  523 A.2d 518

Keshisian v. Del.Supr.  386 A.2d 666

McCool   v.  Gebert    657 A.2d 269

McQueen  v.  Swenson   560 F.2d 959

Micheads v.  State    529 A.2d 752

Miller    v.   State   309 F.supp. 1287

Missouri  v.  Hunter   74 Led 2d 535

North Carolina v Pearce  89 S.ct. 2072

Payne v. Virginia   82 Led2d 801

Powell  v. Alabama   287 US 45

Ricketts v. State    488 A.2d 856

Springer v. U.S.   388 A.2d 846

State v Cook      600 A.2d 352

State v. Dieziger  650 P.2d 800

State v. Gilman   608 A.2d 660

State v. Micheads  625 A.2d 489

State v. Philbrick   551 A.2d 847

State v. Williams   529 A.2d 653

Stevens v. D.C.C.  152 F.supp.2d 561

Strickland v Washington 104 S.ct. 1251

Struvill v Denno   388 US 293

U.S.  v. Archdale   229 F.3d 861

U.S.  v. Ash      461 F.2d 92

U.S.  v. Bennett    44 F.3d 1364

U.S.  v. Chacko   167 F.3d 140

U.S.  v. Christopher 700 F.2d 1253

U.S.  v. Corona    108 F.3d 573

U.S.  v. Davis    974 F.2d 182

U.S.  v. De Custer  624 F.2d 208

U.S.  v. Elliott   849 F.2d 886

Citation Cont.

U.S. v. Gagon   721 F.2d 678

U.S. v. Gerre   154 F.3d 58

U.S. v. Hubbell   177 F.3d 11

U.S v. Jackson   155 F.3d 947

U.S. v. Johnson   130 F.3d 1425

U.S. v. Lester   749 F.2d 1288

U.S. v Lounge   11 F.3d 7

U.S. v. Lui   941 F.2d 844

U.S. v. Magana   118 F.3d 1173

U.S. v. Mealy   851 F.2d 890

U.S. v. Miguel   111 F.3d 666

U.S. v. Murphy   396 U.S. 896

U.S. v Nolan   700 F.2d 479

U.S. v. Rincon   28 F.3d 927

U.S. v. Rivera Pedin   861 F.2d 1522

U.S. v. Scarbough   43 F.3d 1021

U.S. v. Short   181 F.3d 625

U.S. v. Sims   719 F.2d 399

U.S. v. Slochosky   357 F.Supp 79

U.S. v. Socony Vacuum Oil Co.   310 U.S. 150

U.S. v. Spaunhunter   476 F.2d 1054

U.S. v. Supulveda   15 F.3d 1161

U.S. v. Uder   98 F.3d 1039

U.S. v. Wade   388 U.S. 218 ; 87 S.ct. 1926

Weber v. State   547 A.2d 960

Williams v. Coiner   285 FS. 397

Table of Authorities

11 Del. C.  3507

11 Del. C.  3511

11 Del. C.  3513

11 Del. C.  4302

18 U.S.C.A.  3509

Del. Supr. Ct. Crim. R.  12 (b)(c) , (e), (f)

Del. Supr. Ct. Crim. R   15

Del. Supr. Ct. Crim. R.   17

Del. Supr. Ct. Crim. R.   29 (c)

Del. Supr. Ct. Crim. R.   41 (f)

Del. Supr. Ct. Crim. R   43(a)

Del. Supr. Ct. Civ. R.  30.1 through 30.4

Fed. Supr. Ct. Civ. R.  30.1 through 30.4

Del. Unif. R.  603

Del. R. Evid.  601

Fed. R. Evid  601

Del. State Const. Art 1 para 7

Del. Law. R. Prof. Cond. 1.1

D.L.R.P.C.   1.2 (a)

D.L.R.P.C.   1.3

D.L.R.P.C.   3.4 (e)

D.L.R.P.C.   8.4

U.S.C.A.   5

U.S.C.A.  6

U.S.C.A.  14

A.B.A. Standards for Criminal Justice Ch. 17-1.1 (b)

A.B.A Standards for Criminal Justice Ch. 17-5.2 (d)

A.B.A Standards for Criminal Justice  5.6 (a)

A.B.A. Standard for Criminal Justice 5.6 (a)(c)

## Summary of Arguments

1. Ground One: Violations of Federal Rules of Criminal Procedure 18 U.S.C. 3509 which was enacted into State laws, Rules, and Statutes to protect the Constitutional rights of an accused person while issuing certain guarantees to do the same. Made more egregious by its extraneous influences on the jury during deliberations.

2. Ground Two: Judicial Abuses of discretion to allow the functional equivalent of a live witness to testify unsworn over and over in any fashion, within a jury's deliberation denying an accused a fair trial.

3. Ground Three: Violations of Federal Rules of Criminal Procedures 43(a) which was enacted into state law under Del. Supr. Ct. Crim. R. 43(a)

4. Ground Four: Voir dire on the competency of a witness fell well Short of judicial Standards and therefore acted in a capacity to deny the defendant of a fair trial.

5. Ground Five: Prosecutorial Misconduct during trial proceedings by engineering the sharing of changes within testimony to bolster credibility, and orchestrating undo emphasis on certain testimony allowed to penetrate the sanctity of the jury's deliberation room.

6. Ground Six: The prosecutor's personal statements during closing arguments concerning the strength of the State's Case, the guilt of the accused, and the need of the jury to teach the accused a lesson while preventing any chance at any future crimes, were improper and unfairly prejudiced the accused's right to a fair trial. The movant also asserts it was misconduct for a prosecutor to appeal to the passions, emotions, and prejudices of the jury by requesting that the jury act as de facto vigilantes.

7. Ground Seven: Violations of the double jeopardy clause of U.S.C.A. 5, multiplicity within the indictment, convictions, and sentences.

8. Ground Eight: Judicial Abuses of discretions amounting to plain error and possibly misconduct during filing of motions for proper review.

9. Ground Nine: Claims of ineffective assistance of Counsel during trials and the appeals process which violated the constitutional rights of an accused.

10. Ground Ten: Newly discovered testimony and the existence of evidence leading to a request of an evidentiary hearing in the interest of justice pursuant to Del. Supr. Ct. Crim. R. (i)(4).

Foreword

The movant files this petition for review in the interest of justice as he has in the previous motions filed. The petitioner prays that the reviewing justices will carefully review; the motion, the letter of the law, the precident cases used to show past rulings made by the courts, before ruling so as to correct a fundamental miscarriage of justice. *Further it is the earnest hope of the movant that the grounds will be viewed individually and collectively so as to grant the overall view that some of the violations like those within the videotaped deposition of testimony being allowed to prejudicially emphasize the complainant's testimony and ineffective assistances of counsel, led to a Constitutionally unfair trial.* The movant wishes to thank the reviewing justices for your time and considerations in these matters. I am certain that this court will afford the accused a fair review and rule on this matter by utilizing clearly settled opinions and precidents set by the 3rd Circuit Court of Appeals and the U.S. Supreme Court. Thank you ever so much.

Background

On August 31, 2000 the accused was convicted of 2 counts of Rape in the first degree, 1 count of Rape in the fourth degree, and 1 count of unlawful Sexual Contact in the second degree. The defendant filed a proper and timely motion which was mailed on Sunday September 2, 2000 and filed by the clerk of the court on September 6, 2000, requesting a review of the jury verdict pursuant to Del. Supr. Ct. Crim. R. 29(c). This motion included such important grounds as the improper and prejudicial use of a videotaped deposition of testimony entering a jury's deliberations, and several grounds of ineffective assistances of counsel. See Docket Sheet entry No. 34; and exhibited copy of letter of motion. The motion was recieved and acted upon by the same Superior Court Justice as handled the trial. The claims within the motion also addressed several other issues such as police and judicial misconducts. The reviewing justice found it necessary to file the motion and then reply to the movant that the Honorable T. Henley Graves was forwarding the motion to appointed counsel for action E. Stephen Callaway Esq. deemed necessary. The sending justice stated that since Daniel Cousins was represented by appointed counsel, all correspondances requesting review must come through that counsel. This action effectively allowed Mr. Callaway to deny the accused the proper review sought. The defendant then requested that the same grounds be utilized during the direct appeal prepared by appointed appelate counsel Bernard O'Donnell Esq. The petitioner's requests were responded to by Mr. O'Donnell who stated that he would review the issues within the case minus any claims that involved ineffective assistances of counsel and that [he] would raise the issues he deemed to have appropriate merit. After completing the direct appeal motion Mr. O'Donnell did not allow the defendant to review the motion or make additional assertions about issues Cousins wished raised. see exhibits of correspondences between Cousins and O'Donnell, direct appeal motion, and letter stating O'Donnell sent copy of motion elsewhere denying review before filing of direct appeal. The direct appeal was filed, see 793 A.2d 1249, and although the Delaware Supreme Court justices found that some of issues involving improper prosecutorial comments had merit the amount of prejudice did not rise to the level of reversable error. Once the conviction was affirmed the appointed appellate counsel then provided to the defendant a copy of the trial transcripts. Only after reviewing the transcripts were certain issues and violations realized. However since now acting Pro Se, and a possible State remedy being preserved by the Superior Court Justice's actions the defendant resubmitted a motion pursuant to Del. Supr. Ct. Crim. R. 29(c) rerequesting a fair review. The Honorable T. Henley Graves was made aware that this was a subsequent motion under the rule for reasons of exhausting all proper State reviews/remedies and that his actions of sending the original motion to the same counsel being complained of and about for actions that Callaway deemed appropriate should have effectively acted in a manner of preserving the right to such review. The justice ruled on this motion stating that it was untimely,

not addressing that the subsequent motion was filed to avoid a ruling of not exhausting state remedies. Justice Graves than issues a denial and time bar.

Mr. Cousins than files a timely and proper motion pursuant to Del. Supr. Ct. Crim. R. 61. see exhibit of motion and attached memorandum of law. The Honorable T. Henley Graves denies this motion stating that the videotaped deposition was admitted under 11 Del. C. 3507 and that the procedures for 11 Del. C. 3511 therefore did not apply, but the movant has repeatedly attempted to bring to light the "Root Laws" which dictate the basics of law and hence legislative intent as in Del. Supr. Ct. Crim. R. 15. see grounds of motions pursuant to Del. Supr. Ct. Crim. R. 61 which address violations of Del. Supr. Ct. Crim. R. 15. These assert as per Rule 15 (e) use. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissable may be used in accordance with the Delaware Uniform Rules of Evidence or 11 Del. C. 3507. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered into evidence by a party, an adverse party may require the offering of all of it which is relevant to the part offered and any party may offer other parts." which is followed by subsection (h) videotaped deposition of child witness. A videotape deposition of a child witness should be taken in accordance with 11 Del. C. 3511. The reviewing justice improperly lumped all the arguments that remotely involved challenging the videotaped deposition of testimony together within his ruling of denial quoting the statutory challenges without reviewing each ground on its own merits. This behavior solely denied the review about the improper admittance of the evidence exhibit and means to play such being allowed to enter a jury's deliberations room in order to cause prejudicial emphasis. The reviewing justice issues improper procedural bar and attempts to claim that no show of prejudice was made, then asserts wrongfully that no prejudice could result from the statutory challenges brought faith. Justice Graves never adresses the issues housed in Binder, see 75B Am. Jur. 2nd Trial 1671; Binder v. U.S. 769 F.2d 595, 600.; Taylor v. State 727 P.2d 274; Marlin v. State 7447 P.2d 316; and State v. Michaels 625 A.2d 489. Other grounds were raised during the post-conviction motion and are as follows; faulty voir dire on witness competency, prosecutorial misconduct placing persons to share witness testimonys; improper prosecutorial comments during closing arguments, multiplicity, improper review of motion pursuant to Del. Supr. Ct. Crim. R. 29(c), ineffective assistance of counsel, and newly discovered testimony. The remaining issues the reviewing justice issues bars as if he were passing out candy on Halloween. As in the case during ground seven where the justice attempts to claim that a decision was made at trial and no appeal was sought on this decision and therefore cannot be raised on appeal. During the motions for review the movant explains that the officers of the court partook in a web of double speech to avoid attention and objections. Further the petitioner asserts that the defendant failed to make any outbursts about objections because Callaway issued a stern warning, in the holding cell just outside the courtroom, that the trial justice stated any outbursts from the defendant would lead immediately to the defendant being expelled from the courtroom. The movant also raises the contentions that certain violations could not be realized until post-trial when

able to review the trial transcripts. The movant only discusses each issues rulings herein to show these reviewing justices; the bias of the trial and State Appelate reviewing justices, the need for adequate review in the interest of justice, and to clear up the false claims of the reviewing justice. The justice addresses the movants ground Eight and Nine but does not understand the reason for either claim,

Ground Eight brought forth the placing of unathorized persons being placed in a closed courtroom for the sole purpose of sharing changes in witness' testimonies so the state's other witness might change their in-court testimony to give corroberation to prior witness testimony.

Ground Nine as well was not addressing some inconsistancies but the further improper comments of the prosecutor appealing to the emotions, passions, and prejudices of the jury and asking the jury to function as de facto vigilantes. The justice doesn't even review the expounded improper comments being addressed but reviews some assumption about credibility and alcohol consumption then again issues some bogus bar to avoid for proper review by justices whom have not been accused of abusing their discretion and misconducts to prejudice a jury, a verdict, and the defendant's Constitutional rights. The arguments were further expanded on to include that because of the use of prejudicially emphasized testimony the improper comments also took on a more egregious manner of prejudice, "To teach a lesson."

In ground Ten the movant raises that multiple charges which were not specific, convictions, and therefore multiple (consecutive) sentences was improper. The accused primarily challenges the multiplicity within the indictment which was not specific in informing the nature of each charge and secondarily the multiple counts which lead to multiple (consecutive) sentences. The justice is sure to assert his own opinion as to the guilt of the accused and thereby shows his bias and reasoning for doing everything possible to prejudice the outcome of the trial just view the "Stacked deck, loaded gun, loaded dice". This judge did not appreciate the movant raising judicial abuses of discretion and misconducts, nor did the other justices (state) whom sit on the same syntax boards, and thereby leads this movant to prey that the district and Federal justices will offer a fair review of this case according to Constitutional law, interest of justice, and reverse fundamental miscarriages of justice.

Ground Eleven dealt with an improper review of a motion filed to exhaust State remedy that the justices actions preserved the right to but the justice fails to address the first motion filed for review pursuant to the Superior Court's Rule. The justice wishes for everyone to believe that no previous motions were filed requesting a review for a judgement of Aquittal, and therefore shows a level of bias that amounts to judicial misconduct. This is apparent on the record by viewing entry number 34 of the docket sheet,

This brings ground Twelve to the spotlight, the reviewing justice even states that during the post-conviction motion was the first time the petitioner brought challenges of ineffective assistances of counsel when this is simply not the truth

as seen in the original motion filed September 6, 2000 pursuant to Del. Supr. Ct. Crim. R. 29(c). There are many instances of ineffective assistances of counsel, frankly too many to rehash here and these are argued herein. Again these claims did not recieve fair review in the interest of justice or to correct a gross miscarriage of justice.

Ground Thirteen dealt with newly discovered testimony which could not been known of by due diligence as the witness was prevented to come forth by her then husband which was the reason for the witness stated she was recently divorced. There were two letters of which the later stated that the complainant informed Family Service Personell that her custodial grandparent one Betty King forced her to make false allegations and therefore should have caused the court to discover this claims and hold an evidentiary hearing in the interest of justice.

After the unfair review of the motion pursuant to Del. Supr. Ct. Crim. R. 61 and the unjust issuance of bars the movant appealed to the Delaware Supreme Court, again in the interest of justice. The Supreme Courts decision in 850 A.2d 302, see Westlaw Search Result Citations list - videotape provided during jury deliberations, reads in essence that it was correct to give videotaped (Testimony) to a jury along with means to play such within the jury deliberations. Then quoting an unpublished Delaware Case which this movant doesn't believe contained testimony of an accuser. Clearly set standards allow for video evidence of non-testimony and/or videotape (confessions) to be admitted into evidence and into the jury room. But as shown in Binder v. U.S. 769 F.2d 595, 600, and State v. Micheals 625 A.2d 489 adverse testimonial videotapes deny the accuseds certain Constitutional Rights such as a fair trial under U.S.C.A. 6.

The movant recieved a notice of the exhaustion of State remedies and determination of finality. This has led the movant to seek relief pursuant to 28 U.S.C. 2254.

Ground One

Violations of Federal Rules of Criminal Procedure 18 U.S.C. 3509 which were enacted into State Rules and Statutes to protect the Constitutional rights of an accused person and issue certain guarantees to do the same. Made extremely egregious by its extraneous influences on the jury during deliberations.

Standard Scope and Review

The Federal Rules of Criminal Procedures held within 18 U.S.C. 3509 issue requirements which protects the constitutional rights of an accused and were enacted into Delaware State Laws and Rules 11 Del. C. 3511, 11 Del. C. 3513, 11 Del. C. 3507, Del. Supr. Ct. Crim. R. 43(a), Del. Supr. Ct. Crim. R. 15 and 17, Del. Supr. Ct. Civ. R. 30.1 through 30.4.

Argument One

The question of law held within this argument is simple, were the violations to the Federal and State laws, Rules, and statutes which govern the taking of videotaped testimony violated and query whether those violations denied the accused a Fair trial. The requirements governed by and the protections which are afforded by 18 U.S.C. 3509 are incorporated into State laws, Rules, and Statutes; 11 Del. C. 3511, 11 Del. C. 3513, 11 Del. C. 3507, Del. Supr. Ct. Crim. R 15, 17, 43(a), Del. Supr. Ct. Civ. R. 30.1 through 30.4.

The first is that videotaped depositions of testimony may be ordered upon motion to the court for such. (see 18 U.S.C. 3509 (b)(2)(A), and 11 Del. C. 3511 (A). Delaware's Rules of Criminal Procedures are more precise than the Federal Statute and states "upon motion of the Deputy Attorney General", where 18 U.S.C. 3509 says "the attorney for the government, child's attorney, child's parent or legal guardian, or guardian ad litem may apply for an order for deposition by video." There were no such motions or applications made by any party and falls outside the scope of investigatory procedures as being placed on videotape allows for use in place of a live witness as opposed to audiotaped interviews which are supposed to be accompanied by live testimony.

The State Statute also explicitly states in the same sentence and with notice to the defense. This is addressed in the Federal Rule under 18 U.S.C. 3509 (b)(2)(iii), (II) and (iv) which specifies the defense being present. This offers numerous protections to include; proper questioning free of leading, suggestive, and cohersiveness; presence of defendant or counsel to make objections and have instant rulings made on those; and not having spans where the deposee and deposer are outside the view of survailence for reason the defense can viably say was for the cohersion of false testimony, see Federal and State Rule 43(a) presence of defendant.

The Federal Rule states that the proceedings should be held in the same manner as would be allowed during testimony at trial to include the ability to cross-examine, at the time of taking and with some guarantee of

truthfullness. Again 11 Del.C. 3511 is more specific in it's wording but incorporates the same legislative intent for the protection of the constitutional rights when it states" only the attorneys or a defendant acting Pro Se may question the child".

In Subsection (b) of the state statute "a witness may not be compelled to testify in court, at trial, or at any hearing". This is also asserted in Federal law under 18 U.S.C. 3509 (b)(2)(B). This seperates a videotaped interview or deposition of testimony from any other interviewing procedure by the sheer nature of these statements and the viewing of the witness during such questioning. This is especially pertinent as originally the state, defense, and the courts were quoting that the videotape testimony fell within 11 Del.C. 3513 - "Hearsay exception for child victim's out of court statements of abuse", until the accused began to assert that no psychological examinations or findings had been produced. After such assertions the court began to quote the testimony was allowed under 11 Del.C. 3507 - prior statements as affirmative evidence. However when one analyzes the "Basic Root Law" dealing with depositions, Del.Supr. Ct.Crim. R, 15 (e), any statement or testimony preserved by written or recorded means for the future utilization may be used as evidence in accordance with the Delaware and Federal Uniform Rules of Evidence or 11 Del.C. 3507. Also within subsection (h) of Del.Supr. Ct. Crim. R. 15 (e) it is specified that "A videotaped deposition of a child witness must be taken in accordance with 11 Del.C. 3511", which shows clear legislative intent for both statutes to be conformed to during depositions. The controlling Federal authority 18 U.S.C. 3509 is blanketed in such legislative intent so long as it does not infringe on the constitutional rights of an accused to include; the right to counsel, presence of the defendant, cross-examination, and the right to make objections and expect instant rulings on such.

18 U.S.C. 3509 is specific as to the format of such taking as is 11 Del.C. 3511 to include that "at no time may the deposer or the deposee be distorted from the view of the recording equipment, and as deposer it specifies (attorneys) so as to avoid even the suspicion of off recording coersion of false testimony. The violation is blatantly evident upon the record by viewing the videotaped testimony since no transcription was done or provided to the defendant. The preservation of such videotape was requested by the defendant as part of the record until all forms of appeals could be exhausted, both State and Federal. As viewed in the case of Binder v. U.S. 769 F.2nd 595, 600 the Federal courts rendered opinions and conclusions which state that because a videotaped deposition or questioning is unique in that it may be used in leau of a live witness and that it's production and utilization must follow a more defined set of standards then say an audiotaped recording or a written statements.

Since the videotaped deposition of testimony was taken without all prescribed parties being present, the accused was denied his Constitutional protections of presence in accordance with Del.Supr. Ct.Crim. R. 43(a), 18 U.S.C.

3509 (b)(2)(iii)(ⅥI), Right to counsel 18 U.S.C. 3509 (b)(2)(iii)(Ⅱ), 11 Del.C. 3511 (a), right to cross-examine witness testimony which may be presented to the triers of fact at the time of taking, 18 U.S.C. 3509 (b)(2)(iii)(ⅥI), and finally the explicit right to bring instant objections and expecting instant rulings on questions of law 18 U.S.C. 3509 (b)(2)(iii).

  The illegality of the production in the taking of such testimony was objected to during a pretrial motion filed in limine. This motion was neglected to be ruled on prior to or during trial and therefore allowed improper and prejudicial testimony to be utilized to give emphasis to the accuser's false testimony. This motion was filed and presented to Superior Court Justice Richard F. Stokes arguing for the suppression of obviously suggestive, leading, and cohersive nature of the questioning by an unqualified interviewer. Also that such testimony was unsworn and lacked any guarantee of trustworthiness. The defendants Constitutional rights were violated as to; presence, cross-examination, and the making objections about the suggestive, leading, and cohersive questioning and having those instantly ruled upon that so affected the Constitutional Rights of; Due Process under U.S.C.A. 5, Fair Adversarial process under U.S.C.A. 5 and 6 and because of it's use the right to a Fair trial under U.S.C.A. 6. The assertion here is that it was a judicial abuse of discretion for the motion in limine to be deffered and go unruled upon. (see Del. Supr. Ct. Crim. R. 12(e) and 41(f). It is the contention of the movant that had the improper testimony been ruled upon fairly it would have been suppressed and therefore would not have been able to infect prejudicial emphasis on a jury's deliberations denying a fair trial under the sixth amendment of the U.S. Constitution.

  The major violation deals with the extraneous influence and the subsequent prejudicial emphasis should overcome any bars, defaults, or objections in the interest of justice since it so undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the convictions. It was a gross miscarriage of justice to allow the functional equivalent to a live witness to walke into a jury's deliberation and give any additional testimony especially unsupervised. Binder v. U.S. 769 F.2d 595, 600; State v. Michaels 625 A.2d 489 (3rd cir). The prejudice that the testimony was able to inflict upon the jury against the accused caused the jury to neglect the fact that the complainant recanted all her accusations. This critically affected the fundamental rights of fair trial under U.S.C.A. 6.

  Since there was no showing of good cause exists upon the record in accordance with Del. Supr. Ct. Crim. R. 12(e) and the fifth amendment of the U.S. Constitution on a properly filed motion pursuant to Del. Supr. Ct. Crim. R. 41(f) the rights of due process were violated a show bad faith acts by the court's and it's officers. see U.S. v. Archdale 229 F.3d 861, U.S. v. Lui 942 F.2d 844, U.S. v. Miquel 111 F.3d.

  Cousins tried repeatedly to gain fair and adequate

review since the ending of his trial asserting that trial counsel refused to raise objections cousins requested be made. Cousins was told by counsel that any outbursts by the accused would result in his being removed from the courtroom.

The movant further asserts that there were two violations to his Due Process Rights under the <u>fifth and fourteenth amendments</u> and <u>Del. Supr. Ct. Crim. R. 43 (a)</u> Presence of the defendant which were so egregious and their use so prejudicial that it affected the accused's right to a fair trial.

The first of these points of contention was during the taking of videotaped deposition of testimony in which the accused was denied the right to be present, also denying his right of; Due Process, cross-examination, and making objections about improper questioning and the absence of video survailence during Key points of the taking.

The second was when the deposition video was allowed to be viewed during deliberations by the jury and ultimately the triers of fact. This infringed on the accused's right to be present during the giving of any testimony against him. (see <u>Binder v. U.S. 769 F.zd 595, 600</u>, and <u>State v. Micheals 625 A.zd 489 (3rd Cir)</u>. The denial of presence is a critical issue during both these points since they were allowed to deny the movant a fair trial.

This is a further assertion that the pre-trial, and trial justices should have acted Sua Sponte to protect an accused persons constitutional rights of a fair Adversarial process and fair trial. But since these violations were allowed to occur in the manner described herein and in <u>Binder v. U.S; 769 F.zd 595, 600, and State v. Micheals 625 A.zd 489 (3rd Cir)</u> so undermined the constitutional rights of the accused to affect the fundamental legality, reliability, integrity, and fairness of the proceedings. These violations should warrant a full reversal of the convictions and vacate all sentences imposed.

### Ground Two

Judicial Abuses of discretion to allow the functional equivalent of a live witness to testify unsworn over and over in any fashion, within a jury's deliberation denying an accused a fair trial.

### Standard Scope of Review

The question of law herein queries whether it was an abuse of discretion for a trial justice to allow and facilitate the functional equivalent of a live witness to enter the sanctity of a jury's deliberation and give unsworn testimony in any manner and repeatedly so as to cause prejudicial emphasis on such testimony in order to deny an accused a fair trial violating the sixth Amendment of the U.S. Constitution.

### Argument two

It is the assertion of the movant that to allow the functional equivalent of a live witness to enter a jury's deliberation room and give unsworn testimony unsupervised and in any fashion caused prejudicial emphasis on that testimony and therefore denied the accused a fair trial. see State v. Micheals 625 A.zd 489 3rd Cir., and Binder v. U.S. 769 F.zd 595, 600. Allowing a videotaped deposition of testimony or any videotaped statements, especially those which are unsworn and possess no guarantees of trustworthiness, to enter into a jury deliberation room along with the means to play such is an egregious abuse of discretion.

The question posed in this motion has been clearly ruled on in the Federal Supreme Court (see Binder v. U.S. 767 F.zd 595, 600) adopted by the 3rd Circuit by the Court of Appeals (see State v. Micheals 625 A.zd 489). The trial court fell short of its duties to protect the Constitutional Rights of an accused person to a fair trial in accordance with U.S.C.A. 6 by allowing unsworn videotaped deposition of testimony to enter into a jury's deliberations for the express purpose of causing prejudical emphasis to secure a false conviction, This type of behavior is reminiscent of the Salem Witchcraft trials of 1692. The movant contends that the prosecution's consciousness of the weakness of its case led them to carefully orchestrate the actions in order to cause prejudicial effect on the ultimate triers of fact. This contention is directly attributed to the prosecution's offer to the jury during James Adkins' (ADA) closing arguments. see exhibit of trial transcripts page C-8 in which Mr Adkins states " look at the C.A.C. interview. we know that tape. That videotape which is in evidence, you can look at it again. You can look at it one time or you can look at it ten times". At this point the accused was confering with his trial counsel and showed him a photocopied case cite of Binder v. U.S. 769 F.zd 595, 600 and requested that E. Stephen Callaway Esq, make an objection to such offer. Callaway advised the accused to save the issue in case the jury returned a guilty verdict, Cousins had been warned prior to trial not to make any outburst or he would be expelled from the courtroom.

Upon the conclusion of closing arguments the trial justice T. Henley Graves closed the the trial. see pages B-230 and 23]. Trial Justice Graves States " the evidence is closed" and " You have heard all the evidence that is to be presented to you in this case. Then after this the trial justice on page C-64 of the trial transcripts makes special concessions by instructing the bailiff " and let's make sure they are going to need a piece of video equipment in there. We need to take that in there." After the close of testimony it therefore becomes an abuse of discretion and should be reviewed for plain error to send the functional equivalent of a live witness into the jury deliberation room to retestify. The second requirement for a rereading or rehearing of testimony must come after members of the jury request the review and must have particular facts or circumstances in question warranting such a review or rehearing.

      Another consideration which is that neither counsel's prosecution or defense were present during this improper testimony, nor was the justice or accused, This is in violation of Federal and State Rule 43(a) of Criminal Procedures which each state " the defendant shall be present at the arraignment, at the time of plea, at every stage of trial". see U.S. v. Christopher 700 F.2d 1253, 1261-62; U.S. v. Binder 769 F.2d 595, 600; and State v. Michaels 625 A.2d 489,

      The movant also hereby asserts that the replay of the videotaped testimony in the jury deliberation room placed prejudicial emphasis on the State's witnesses' videotaped deposition of testimony over those made during trial proceedings. The rereading or rehearing of a witness' testimony is disfavored when it unduly emphasizes that testimony. see U.S. v. Nolan 700 F.2d 479, 486, Binder v. U.S. 769 F.2d 595, 600. The determination to allow a rereading or rehearing of testimony must be based on particular facts or circumstances in dispute which are central to the case. Undue Emphasis of a particular testimony should not be permitted, videotape testimony is unique, it enables the jury to hear the testimony and see the witness observing the demeanor and actions as well. It serves as the functional equivalent of a live witness during trial proceedings according to 18 U.S.C. 3509 and 11 Del.C. 3511. Credibility was a crucial issue in this case as there were only circumstantial evidence that in no way directly linked to the accused in any crime and medical and forensic experts both testified that hairs were found in the vaginal area of the victims panties which could not have come from the accused. The only circumstantial evidence of any crime was an abrasion that the only medical physician to testify stated could have occurred by any means. Under these circumstances the videotape took on a great significance. The movant is aware that the appeals process is not a forum to retry or reargue the cases facts but allowing a jury to hear and see that testimony a second and successive times within the sanctity of the jury deliberation room, unduly emphasized that testimony over the testimony given at trial where the complainant directly recanted her prior testimonys. The question of law posed

herein is did the videotaped testimony cause prejudicial emphasis? The answer in all the precedent cases and Federal law is yes and violations of this kind can never be harmless. Did the allowance of such viewing prejudicially emphasized testimony during a jury's deliberation amount to an abuse of discretion bordering on judicial misconduct, and did these violations affect the accused's right to a fair trial?

Furthermore there were additional problems with the replay of the videotaped testimony, such as the trial justice's actions granted the jury the opportunity to view the testimony in any manner it deemed appropriate, the videotaped testimony did not possess any oath or affirmation or duty to give truthful statements. see exhibit of pages C-35 and C-36    of the trial transcripts. see also U.S. v. Simms 719 F.2d 375, 379 ; U.S. v. Gagon 721 F.2d 672, 678 ; State v. Philbrick 551 A.2d 847; and Francisco Sacco v. U.S. 869 F.2d 499. The replay of the video testimony denied the accused the right to be present while testimony against him was given unchallenged which added to the fundamental unfairness of such trial according to the U.S. Constitution's sixth amendment. see U.S. v. Rincon 28 F.3d 927, and U.S. v. Davis 974 F.2d 182. During the jury instructions on page B-251 of the trial transcripts, you can see that the trial justice is aware that it is procedurally wrong to comment on testimony and that the jury should have only been able to rely on their own recollections about testimonies. see Binder v. U.S. 769 F.2d 595, 600 ; State v. Micheals 625 A.2d 489.

Ground Three

Violations of Federal Rules of Criminal Procedure 43(a)
which was enacted into state law under Del. Supr. Ct. Crim. R. 43(a).

Standard Scope of Review

Under Federal Rules of Criminal Procedure 43(a) and Del. Supr. Ct.
Crim. R. 43(a) the right of presence of an accused is one of the most fundamental
of all rights under the U.S. Constitution and were violated during the making of the
videotaped deposition of testimony and the prejudicial use of such by the jury
during its deliberations.

Argument Three

The Constitutional question of law held within this argument
is, was the accused denied his rights of presence which should have
been protected by Federal Rule of Criminal Procedure 43(a) and Del. Supr.
Ct. Crim. R. 43(a), and further did those violations of Due Process also
deny the accused a fair trial under U.S.C.A 5 and 6? It is the contention
of the movant that Federal law under 18 U.S.C. 3509 and State laws under
Del. Supr. Ct. Crim. R. 15 and 17; 11 Del. C. 3511, 3507, 3513; and Del. Supr. Ct.
Civ. R. 301 through 304 all clearly state that the accused has the right to
be present during the taking of any videotaped depositions of testimony
as does Federal Rule of Criminal Procedure 43(a), and Del. Supr. Ct. Crim. R.
43(a). The right to be present during this action is to allow for cross-
examination, and to permit the making of objections and expecting an
instant ruling on those, such as the suggestive, leading, and cohersive
questioning of the witness, or the coherssion of the complaining witnesses'
testimony while outside of the view and audio of survailence.

A second violation was committed with regard to the
presence of the defendant when the jury was allowed to hear that
testimony. If it is appropriate to allow the jury to hear the testimony
of a witness a second time at all, which has been ruled against, the
preferred procedure would require the preparation of an instant transcript
of that videotaped testimony and a rereading of said testimony to the
jury in the courtroom with all parties present. "With all parties
present", is a crucial point because without all the necessary parties
present it denies the accused and his defense the right to re-cross-
examine the witness or request a replay or rehearing of the testimony in
its entirety. These violations directly affect a defendants Constitutional
rights of due process under U.S.C.A. 5 and 14 and in the greater picture
deny the right to a fair trial under U.S.C.A. 6.

Ground Four

Voir dire on the competency of a witness fell well short of judicial standards and therefore acted in a capacity to deny the defendant of a fair trial.

Standard Scope of Review

It is the assertion of the movant that under Federal Rules of Evidence 601, and Delaware Rules of Evidence 601 that the voir dire on competency fell well short of judicial standards. And this failure by the court in making a proper determination about whether the complaining witness had adequate knowledge of the difference between the truth and a lie led to the accused being denied a fair trial.

Argument Four

The Constitutional question of law is did the trial justice fall short of his duty in determining whether the complaining witness properly knew the difference between the truth and a lie, and her duty to give such truthfull testimony? Further did the justice's failure allow the witness to give false testimony so as to amount to a denial of the Constitutional Rights of the accused?

The position of the movant is that the voir dire on competency was conducted in a manner that fell short of judicial standards and therefore denied the accused of a fair trial. The movant is aware that any witness is competent so long as there are certain assurances that the witness can differentiate between the truth and a lie. The petitioner is well aware of 10 Del. C. 4302 when forming this and past arguments held within appeals. The assertion is that there was not enough of an examination done to properly establish that there was an understanding of the obligation to tell the truth. Also that the voir dire on competency should have been performed in front of the triers of fact, so they could give the proper weight to the credibility of such person's testimony especially when the witness states she doesn't know the truth from a lie. Because of this the movant contends it is the legislative intent of 10 Del.C. 4302 and the Federal Rules of Evidence 601 to specify that no child under 10 years of age can be excluded from testifying "for the sole reason" that they must give true testimony verses the penalty of perjury. However the triers of fact (the jury) may consider the age and more importantly the degree of understanding of the obligation of an oath and the duty to be truthfull. Therefore the challenges go beyond the simple issue of an oath. An oath is a contractual term in the meaning of law and places a penalty against perjury, which under this statute is relinquished against those persons under the age of 10 years. The State's attorney as seen on pages A-64 through A-67, changes his contentions about whether or not to allow the jury to be present during the voir dire on competency. The movant in this case is certain the State was pleased that the jury wasn't present to hear the complainant say that she

did not know the difference between the truth and a lie. The court then engineers what the trial justice himself states was a "stacked deck, loaded gun, loaded dice" for the prosecution by not allowing the jury to hear the witness testify on pages A-71 and A-72, (see exhibits of trial transcripts), that the complainant (BM) does not know what the truth is or what a lie is. It is the position of the movant that the courts officers created a chain of double talk and their continued changes of assertions in order to throw off any objections. Therefore it was only once able to review the transcripts post-trial and after direct appeal was the clarification of the issue able to be realized and thereby should overcome any and all bars and defaults which the lower courts would wish to place pursuant to Del. Supr. Ct.Crim. R. 61 (i)(4) if for no other reason than in the interest of justice. The trial court should have known how to accurately protect an accused's rights Sua Sponte. To exclude the triers of facts from hearing the voir dire certainly gave the prosecution a "stacked deck, loaded gun, loaded dice", and fell well below the judicial standards set by 10 Del. C. 4302 and the U.S.C.A, 6. This was critical as it purposely precipitated the giving of obviously false testimony such as when (BM) was asked "How do you know your mom-mom was looking for you?". To which the witness replied "Because it was my friends house". The question is then posed "Whose house were you at?" and then (BM) says "Brittany Spears, I know where Brittany Spears lives". (see exhibit of trial transcripts marked as page A-94). There were numberous instances where the witness makes statements about what certain body parts are called, then is asked if she ever refers to them by any other names, which (BM) replies in the negative. She then calls those body parts by other names and is again asked if she called them by other names and again answers in the negative. ~~the~~ According to 10 Del.C. 4302 the degree of the obligation of an oath may be considered by the triers of fact in judging the witnesses credibility. The Superior Court justice states that the movant made no show of prejudice, but however the movant asserts that in the memorandums of law the movant plainly exhibits and challenges numberous confused, inconsistent, or to be blatantly plain, obvious false and perjurious statements that were allowed by the justice, and the attorneys to go unimpeached. The prejudice as stated in every appeal was that the obviously false testimony was allowed to go unimpeached and unquestioned even after (BM) stated she did not know what the truth is and what a lie is. It was these behaviors which affected the constitutional rights of the accused under U.S.C.A. 5, 14 and 6. see also F.R.E. 601, D.R.E. 601, ABA Standard 5.6(a). In the interest of fairness the movant requests that the witness' testimony be reviewed as a whole but no testimony ~~is~~ more crucial than that on page A-114 and A-115 where the witness under oath and during testimony gives direct recantations of all prior testimony. see exhibit of trial transcripts A-114 and 115. Other portions of testimony take on a certain amount of significance such as when the complainant mis-identifies the prosecutor James Adkins as the

interviewer. These were countered by testimony of other state witnesses as being false. The movant will exhibit (pages A-90 and 91) where the witness is asked if she remembers talking to a man named Buster and she told him the truth, and if anyone forced her to talk to him in order to give credibility and an aire of affirmation about the veracity of said testimony. There will also be an (exhibit of trial transcripts page A-132) where Ralph Richardson (Buster) is asked if Mr. James Adkins was present on the day of the interview in which he replies as "no, he was not." The complaining witness' testimony was plagued with confusion, perjury, and obvious failures to impeach perjurious witness testimony. (see exhibit of trial transcripts pages A-82 through A-84). During this testimony the witness identifies portions of the body by certain names and is asked about whether she called them by other names which she answers as no. (ISM) then calls these body parts by other names and was asked if she refers to them by any other names and answers in the negative. The petitioner will explore in a following issue why an outside party was placed in the courtroom for the express purpose of coaching other witnesses about the obvious changes and perjurious testimonies so as to bolster the credibility of false statements, and the allegations as a whole. This also fiscilitated a gross miscarriage of justice and denied the accused a fair trial under the sixth amendment of the U.S. Constitution. The court and it's justices orchestrated a "stacked deck, loaded gun, loaded dice" so it would place the defense at a substantial disadvantage. The movant also give case cites (U.S. v. Rivera Pedin 861 F.2d 1522; Due to the considerable amount of experience the litigators and justices share collectively or individually, the failure to correct or impeach false statements by the witnesses known to be false was reversable error), and U.S. v Spawnhunter 476 F.2d 1054 and U.S. v. Wheeler 159 U.S. 524; which both address perjury in testimony being allowed to be given due to a faulty voir dire that fell so far below acceptable judicial standards as to deny the accused a fair trial under U.S.C.A. 6), which set clearly settled standards of what must be ascertained about the understanding of; duty to tell the truth, and the necessary knowledge of the differences between the truth and a lie.

Therefore it is the claim that voir dire, outside the presence of the triers of fact allowed obvious false testimonys to be presented; go unimpeached, without the jury knowing the witness' lack of knowledge of truth or duty to give true testimony, fell below clearly settled and set judicial standards which created constitutional violations of U.S.C.A 6 right to a fair trial. Because the constitutional violations created a fundamental miscarriage of justice that should be rectified in the interest of justice these claims should overcome any and all bars and procedural defects issued. Also because the constitutional violations so undermined the fundamental legality, reliability, integrity, and fairness of the proceedings leading to a conviction this argument should be granted weight over any bars issued by the lower courts and be reviewed De Novo in the interest of justice. These violations could not be realized by due diligence because of the double-talk and changes of

contentions by the litigators until reviewing trial transcripts after direct appeal. The violations should support a reversal of convictions in the interest of justice.

### Ground Five

Prosecutorial Misconduct during trial proceedings by engineering the sharing of changes within testimony to bolster credibility, and orchestrating undo emphasis on certain testimony allowed to penetrate the sanctity of the jury's deliberation room.

### Standard Scope of Review

The movant raise contentions that due to the State's attorney violating; the Delaware Rule of Professional Conduct 8.4, A.B.A. Standards, 18 U.S.C. 3509 and more importantly those protections afforded by the 5th, 19th and 6th amendments of the U.S. Constitution, His trial was caused irreparable harm and prejudice by the actions and therefore denied the accused a fair trial.

### Argument Five

The movant raises the position that because the State's attorney placed unauthorized individuals in a closed courtroom for the express purpose of sharing changes between prior statements and those given during the trial proceedings to avoid impeachment of certain testimony attempting to bolster credibility in testimony known to be false. The trial Justice made the order for witnesses "not to discuss" testimony given by the complainant. see exhibit of trial transcripts marked as page A-120. On page A-120 it can also be realized that the prosecution and court allowed a social worker assigned to work with the court identified as "Laurel" to be in a closed courtroom for the express reason of sharing changes in the in court testimony and those made prior to trial. The movant brings forth the assertion that these actions were done to bolster the credibility of the State's witness and avoid further direct contradictions between the testimonies of each of the State's witnesses. It is obvious in the pretrial statements that the door to the bathroom was not locked but open. see exhibits of; A: Statement taken during physical Exam via Theresa Keller M.D., B: Preliminary hearing transcripts testimony of Det. Robert Hudson D.S.P., C: Statement taken during physical exam via Dr. Janicia Thomas M.D., D: Testimony of complaining witness on trial transcripts A-112, 114, and 115, E: Testimony of Betty King from trial transcripts A-143, 144, and A-171 through 174, F: Cross-examination of Robert Hudson from trial transcripts pages B-65 through 67.

If the State and State's attorney had any faith in the veracity of testimony given at trial, (The only which was supposed to be sworn as the truth) then the charges and indictment should have been immediately amended to include false imprisonment, and kidnapping, see U.S. v. Spoonhunter 476 F.2d 1054, U.S. v. Wheeler 159 U.S. 524. During the testimony of Betty King on pages A-143 and 144 of the trial transcripts it is obvious and will show that the witness was programed with the changes in the complainant's in court testimony and fumbled having to alter her testimony to add weight and credibility to false testimony. The movant is aware that inconsistencies in a witness' testimony would not normally be reversible error as cited in U.S. v. Scarborough 43 F.3d 1021, Because testimony did not establish the unethical

behavior by the prosecutor. see also U.S. v. Magana 118 F.3d 1173. However this movant offers the fact that a person whom was not warned (directly) about not sharing testimony given directly before the witness leaving at a break but should have known not to violate the open order on A-120 of trial transcripts. Truthfully the accused was unaware that the individual's presence in a closed courtroom was or is supposed to be outside the parameters of 18 U.S.C. 3509, because of the maliciousness of the act to deny a fair adversarial proceedings. Further this movant addresses the fact that when the testimonies are examined it becomes evident that the prosecution, whether it be the prosecutor themself or any member of the State's prosecution team to include social workers, attempted to share changes in testimonys from prior statements. And therefore also blatantly ignored his duty to impeach obvious false testimony even if it is from his own government witnesses, see A.B.A. Standard of Criminal Prosecution 5.6(a). It is not the inconsistancies in the testimony which is being complained about as the superior court justice implicated in his decision but the obvious sharing of the inconsistant portions from prior statements by a member of the prosecution team placed in a closed courtroom and should have known by instructions to others not to share any portions or changes with other witnesses to bolster false testimony. The petitioner makes assertions directly relating to the bathroom door and it's alleged positioning as it is plainly on the record that the grandmother had to change her testimony to add credibility to the prior testimony of the complainant. Betty King stated on A-143 and 144 "I went towards the bathroom. I opened – – – I tried to open the door." This was made more egregious and amounted to plain error and misconduct when the prosecutor failed to impeach his witness' obvious false testimony and shared testimony that is perjury. Due to the considerable knowledge of the State's attorney, experience, and time in practice these behaviors raise to reversable error. It is the prosecutor's responsibility to represent all the persons; the State, his client, and the accused when he knows or suspects false accusations or testimony. Simply because there were no objections tendered by the defense, nor the justice acting Sua Sponte doesn't relinquish the prosecutor from his duties. These behaviors taking place becomes reversable error and exhibits gross misconduct leading to a miscarriage of justice that denied the accused a fair trial under U.S.C.A. 6. In as much as it was prosecutorial misconduct to place a person in a closed courtroom in order to share changes in one witness' testimony to bolster the testimony by having the next witness know of the inconsistancies from statements made prior, covering those acts of bad faith would merely act as a judicial ostrich. see Rules of Professional Conduct L.A.R. 8.4; 18 U.S.C. 3509 (h)(;); and violations of Criminal Procedures of Adult Attendant, and Ad Litem Standards; A.B.A. Standards of Criminal Justice 5.2(d) and 5.6(a); and ultimately U.S.C.A. 5, 14, and 6. These kinds of behaviors within the justice system also placed the accused at a substantial disadvantage placing the denial of a fair trial. see U.S. v. Rivera Pedin 861 F.2d 1522.

### Ground Six

The prosecutor's personal statements during closing arguments concerning the strength of the State's case, the guilt of the accused, and the need of the jury to teach the accused a lesson and prevent any chance at a future criminal acts, were improper and unfairly prejudiced the accused right to a fair trial. The accused further asserts that it was misconduct for prosecutor to improperly appeal to the passions, emotions, and prejudices of the jury by requesting that they act as a defacto vigilantes.

### Standard Scope of Review

There was no objection to the improper prosecutorial remarks in the closing arguments, nor did the court act Sua Sponte to protect the constitutional rights of the accused. Therefore the standard and scope of review is plain error. Trump v. State 753 A.2d 963, 964. When the prosecutor's statements substantially prejudices the accused's rights to a fair trial under U.S.C.A. 6 and therefore the conviction must be reversed even with the absence of an objection. Robertson v. State 596 A.2d 1345.

### Argument Six

Under clearly settled standards a prosecutor may not allude to his personally beliefs in the accused's guilt or vouch for the credibility of the State's witness. See A.B.A Standards for Criminal Justice 3-5.8(b) 3d ed 1993. Despite the prohibition the prosecutor clearly expressed his personal beliefs in the State's case in the closing arguments of the trial. see Michaels v. State 529 A.2d 752, 763; Brakenbrough v. State 522 A.2d 851, 858; Hughes v. State 437 A.2d 559.

On page C-9 of trial transcripts D.A.G. James Adkins states "Well I tell you what the evidence shows", and on page C-16 "We are not trying to mislead you with that", and again on pages C-19 and 20 where Mr. Adkins says regarding the accused's case "Does this all add up? The evidence shows it doesn't, I think. I'm not sure about the defendant's story of what happened. He's an adult. He is an adult and shouldn't he be a little better able to keep the facts straight, especially major facts than a five year old child?" Although there was no objection to these closing arguments which were clearly improper and should not have been allowed, see Trump v. State 753 A.2d 964-65. Not only was the jury not instructed to disregard the clearly improper argument, but the prejudicial effect of the error was not lessened because the state's argument merely responded to an improper argument by the defense. Clayton v. State 765 A.2d 940, 944-45.

First person arguments should always be avoided by the prosecutor; an expression of personal belief concerning guilt is improper. Pennell v. State 602 A.2d 48, 51. The prosecutor cannot give added weight to the credibility of a witness by personally vouching for their credibility, Weber v. State 547 A.2d 948, 960; U.S. v. Sepulveda 15 F.3d 1161. Counsel may not personally comment on the legitimacy of a party's claim or defense. Rubelen Piano Co. v. Di Fonzo 169 A.2d 240, 248-49. see page C-88 of trial transcripts "We have a mountain of evidence over here for the state and a molehill of evidence here that is based upon, you know, Brittany didn't

say this the exact way". Mr. Adkins fails to mention a large portion of the defenses molehill is where; the complainant directly recanted all prior testimony under oath during trial, that there was absolutely no DNA evidence which linked the accused to the alleged victim but the only evidence dealing with DNA was the accused and an unknown donor, (which is known to the accused as Danae' Abney his ex-fiancé;) and a hair found in the victim's undergarments that was testified to that it could not have come from the accused. A prosecutor may not personally comment on the strength of the State's case or the credibility of the defendant's testimony. Warren v. State _____ A.2d _____ (per curiam) (attached Hereto). "One of the most reprehensive things a prosecutor can do is attempt to put into evidence before the jury his own or his colleague's opinion as to the guilt of the defendant he is prosecuting." From U.S. v. Socony-vacuum oil Co. 310 U.S. 150, 264. Additionally improper comments occur on pages C-25 and C-58 of the trial transcripts where the prosecutor repeatedly states "that's proven".

"The prosecutor's argument is likely to have significant persuasive force with the jury... Prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with the prosecutor's office but also because of the fact-finding facilities presumably available to the office". Commentary from A.B.A. Standards for Criminal Justice 3-5.8 (2d ed 1980). In this case witness credibility was central to the resolution of the defendant's guilt. Thus, the prosecutor gave added weight to the credibility of the complainant at trial by personally vouching for the State's Case. Weber v. State 547 A.2d 960. Trial Counsel must not vouch for a witness' credibility. Jardel Co. Inc. v. Hughes 523 A.2d 518, 532-33. The personal appraisal of the case by the prosecutor below was blatantly improper and prejudiced the defendant's right to a fair trial based exclusively on the evidence. Brokenbrough v. State 522 A.2d 859, Clayton v. State 765 A.2d 942.

        In finalizing closing arguments, the ~~personally~~ prosecutor also personally invited the jury to teach the defendant about "justice" by convicting him :        "I think we have come full circle here, ladies and gentlemen. Brittany Martz has learned alot through her experience with this man. Now is the time for him to learn. It is time for him to learn about justice. It is time for him to learn that you are not going to commit these despicable acts on a five year old child in Sussex County and in this State and in this community and get away with it, Find him guilty, Thank you."

        The comments of the prosecutor improperly invited the jury to consider the offense's verdicts future effects on the child complainant and the community, county, and State. "You haven't had to live it. And if there is anyone here that believes the impact on this child will not last longer than the incident, beyond, it will last long beyond this trial". see page C-4 of the trial transcript. It is not appropriate for the prosecution to invite the jury to consider the effect of their verdict on whether the accuser will suffer continued psychological harm. see Ray v. State 587 A.2d 439, 442 ; Webb v. State 663 A.2d 452, 463 ; Mason v. State 658

A.zd 994, 998. Further it is made more egregious and improper in that the statement appealed to the passions, emotions, and prejudices of the jury and suggested that the jury should act as a group De facto vigilantes. see A.B.A. Standards for Criminal Justice 3-5.6 (b)(c), see also pages of trial transcripts in exhibits C-27 and 28. These comment are the functional equivalent to asking a jury to predict and avoid any future acts, crimes, or offenses should the jury not return a guilty verdict. see State v. Williams 529 A.zd 653; U.S. v. Sepulveda 15 F.3d 1161; U.S. v. Lester 749 F.2d 1288 as well as D.L.R.P.C. 3.4(e).

So too, the prosecutor's opinion as to the justness of the State's case -- inviting the jury to teach the accused about about "justice" by convicting him -- had no place at a fair trial. Mason v. State 658 A.zd 994, 997; Diaz v. State 508 A.zd 861; D.L.R.P.C. 3.4(e). These unfairly prejudicial remarks en toto were directed to the central issue to be determined by the jury: witness credibility. There were no steps taken to mitigate these prejudicial remarks and errors. Hughes v. State 437 A.zd 559, 571. Although trial counsel did not object contemporaneously to these errors this court has previously ruled that the trial justice should also act Sua Sponte to control the conduct of the attorneys and at times act even without objections when it is in the interest of protecting the constitutional rights of an accused. Brokenbraugh v. State 522 A.zd 851, 863. Therefore these clearly prejudicial remarks deprived the defendant of a fair trial. The prosecution is constitutionally bound to provide the defendant a fair trial and avoid objectionable tactics even if there is no objections:

A prosecuting attorney represents all the people, including the defendant who is being tried. It is his duty to see that the state's case is presented with earnestness and vigor, but it is equally his duty to see that justice is done by giving the defendant a fair and impartial trial. Bennett v. State 164 A.zd 442, 446; Mason v. State 657 A.zd 999.

Because these unfairly prejudicial remarks in the prosecution's closing argument undermined the defendant's substantial right to a fair trial, a reversal of the defendant's convictions and a new trial is required in the interest of justice. The movant asserts that these are the same types of comments and theatrics that were utilized to conduct lynchings and burnings in the Old South and to convict suspected persons of practicing witchcraft in Salem Massachusetts in 1692. The difference between the comments that the new judicial standards finds to be repulsive, and those used to facilitate lynchings in the old South are that all the parties are caucasian. Over and over the higher courts have had to admonished the prosecutors for such improper behavior and comments when they place the defendant at a substantial disadvantage that undermineds the rights to a fair trial. see U.S.C.A. 6; Micheals v. State 529 A.zd 752; U.S. v. Mealy 851 F.2d 890; Hughes v. State 437 A.zd 559, and emphasis on Hunter v. State Del. Supr. Ct. 239, 2000. see also D.L.R.P.C. 3.8 and A.B.A. Standard for Criminal Justice 4-7.8.

Ground Seven

Violations of the double jeopardy clause of U.S.C.A. 5, multiplicity within the indictment, convictions, and sentences.

Standard Scope of Review

Under U.S.C.A. 5 of the U.S. Constitution and the contained double jeopardy clause the movant asserts the position that there was multiplicity within the indictment, convictions, and sentences and thus should be reviewed De Novo.

Argument

It is the assertion of the accused and therefore the constitutional question of law that it was plain Error by the prosecutor and presiding trial justice whom also handed down the sentencing when multiple counts were levied in the indictment, but more importantly those punishments and prejudices which were sought and obtained stemming from one alleged act. The true bill of indictment was non-specific and denied the accused the right to adequately understand and prepare defense for the allegations charged in Count 1 of Rape in the first degree and Count 2 of Rape in the first degree, see True Bill of indictment in exhibits. The non-specification within the indictment fundamentally denied the accused adequate notice of charges against him and their true nature which denied the right to prepare for adequate defenses. The double jeopardy clause of the U.S.C.A. 5 should be used for review of multiplicity and substantially overlapping issues of proof or requirements needed to procure multiple convictions and penal sentences. Brown v. Ohio 53 L.ed2d 187; Payne v. Virginia 82 L.ed.2d 801; Cook v. State 600 A.2d 352. These actions not only denied for adequate understanding of the allegations made against him, and the ability to prepare adequately for the trial proceedings, but also prejudiced the accused with the jury during their decision making denying his rights of a fair trial under U.S.C.A 6, U.S. v. Elliott 849 F.2d 886, U.S. v. Bennett 44 F.3d 1364.

The accused expressed to his appointed counsel his wishes to challenge those multiple offenses charged in the indictment which required the same and substantially overlapping issues of proof without any specific differences or factual issues about what acts were alleged, from within a single act. Due to the unspecific wording within the counts held within the true indictment and the fact that only after clarification able to be realized during the trial proceedings this issue and therefore challenges must be brought in post-trial reviews, see U.S. v. Chacko 169 F.2d 140; U.S. v. Hubbell 177 F.3d 11; and North Carolina v. Pearce 89 S.ct 2072.

Multiplicity occurs and attaches when multiple charges and punishments are sought from the same alleged incident or offenses' temporal or spatial units. These terms deserves adequate definition to facilitate this review. Temporal-relating to or limited by time, and Spatial - of or relating to space, see Blockburger v. U.S. 52 S.ct 180. The established standard is set in Blockburger as to whether multiple chargings constitute the risk of being twice punished for an alleged single act or offense. The State relies on and the court state the case of

Wyant v. State 516 A.2d 647 which differs significantly from made in this case because the offenses in the wyant case stemmed from a series of attempted assaults, assaults, and other offenses which took place at distinctly seperate locals within the same residence and with spans of time between each alleged act. In wyant the crimes alleged could be distinctly seperated by Temporal or Spatial units.

Also established was that multiplicity is harmless only when concurrent sentences are sought or administered. U.S. v. Lounge 11 F.3d 7, and U.S. v. Jackson 155 F.3d 947. These multiple chargings and prosecutions not only can result in multiple consecutive sentences but also prejudices the jury against the accused. see U.S. v. Corona 108 F.3d 573; U.S. v. Johnsen 130 F.3d 1425; Missouri v. Hunter 74 L.ed 2d 535. The accused will also exhibit sentencing order. Theres no legislative intent evident in the laws and statutes of the U.S. or State of Delaware to allow multiple chargings for an alleged single act of offense. see U.S. v. Gore 154 F.3d 58; U.S. v. Short 181 F.3d 625; U.S. v. Uder 98 F.3d 1039.

Because other major constitutional violations were allowed to occur in order to lend prejudicial emphasis on certain testimony that was thereby allowed to enter the sanctity of the jury's deliberation room and assist by prejudicing the jury against the accused, only added to the initial wrong of multiplicity within the indictment, permitting an ongoing wrong of multiple consecutive sentences. These constitutional violations caused a gross miscarriage of justice that so undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the convictions, and multiple sentences handed down should require the reversal of all charges and vacating of all sentences.

Ground Eight

Judicial Abuse of discretion amounting to plain error and possibly misconduct during a subsequent filing of motion once acting Pro Se.

Standard Scope of review

Once able to act Pro Se the movant filed a subsequent motion for review under Del. Supr. Ct. Crim. R. 29(c) which the justice failed to give the proper review after acting to preserve such rights amounting to plain error and showing judicial bias or prejudice.

Argument Eight

The movant will first establish a background history of events leading to the judicial abuses of discretion. The movant originally filed proper and timely motion with the trial court on 9-6-2000 requesting review of jury verdict which included issues the accused requested be made during the trial such being; the improper allowance of videotaped testimony being able to enter a jury's deliberation room, and just as important ineffective assistance of counsel. see exhibit of docket sheet entry no. 34. Also see Binder v. U.S. 769 F. ed 595, 600. This initial motion was filed by the accused himself in order to meet the 7 day time limitation for filing as per Del. Supr. Ct. Crim. R. 29(c) and because it included claim of ineffective assistance of counsel.

The movant was informed by the court that justice T. Henley Graves filed the motion on the docket but then sent the motion to the appointed counsel which was being complained about. Appointed Counsel E. Stephen Callaway Esq. failed to act on this motion and resubmit it to the court for proper review. Appointed Counsel changed shortly after that point to an appellate attorney Bernard O'Donnell. Neither attorney acted on the motion for adequate review. This brings the movant to explore the prejudices an accused faces due to the monetary class the person belongs to and therefore the protections that individual can afford. Because the defendant was unable to afford a private attorney the only alternative was to operate with an appointed counsel. Within the local jurisdiction (sussex County) an appointed counsel "public defender" do not accept collect calls from incarcerated persons. Therefore when an accused person cannot post bail that persons interests are further impeded, just as are an accused's rights to particular appeals and reviews.

The forwarding of the accused's motion for review under rule 29(c) to the very attorney being complained of for action he himself deemed appropriate along with the timely filing should act as a preservation of the right once able to act Pro Se. The movant then allowed the appellate public defender to produce his own direct appeal after requesting that several issues be made, and was written back by Mr. O'Donnell who stated that the accused should sit back and let him do what he's going to do because he will do what he wants, see letter from Mr. O'Donnell in exhibits.

possible forms of state remedies. The movant resubmitted a revised motion for review under Del. Supr. Ct. Crim. R. 29(c) on 10-22-2002 to exhaust the unresolved state remedy. The reviewing justice T. Henley Graves refused to entertain the arguments and stated that he was denying the motion and issuing a time bar. These bad faith acts should constitute plain error and the constant failures to give proper review of the issues using the case law consistant with Constitutional law and ruled on by the higher courts and should produce the further showing of judicial prejudice and bias, if not blatant misconduct. Therefore because the violations undermined the fundamental legality, reliability, and integrity of the court's decisions begs for an order by this court for a reversal of the convictions above any and all bars placed against the arguments held within by the lower courts. Because the movant has had to suffer because of the prejudices of the courts and it's justices constitutes an ongoing wrong and should be reviewed in the interest of justice. see Exhibits of motions pursuant to Del. Supr. Ct. Crim. R. 29(c).

### Ground Nine

Claims of ineffective assistance of counsel during trial and appeals processes which violated the constitutional rights of the accused.

### Standard Scope of review

This case should be reviewed and entertained by the courts for the violations of Delaware Lawyer's Rules of Professional Conduct 1.1 through 1.4 and 8.4, Also for those constitutional protections of rights which should have been afforded by A.B.A Standards of criminal justice and U.S.C.A. 6.

### Argument Nine

The movant brings faith the assertions of ineffective assistance of counsel against both trial and appelate appointed counsels. These claims include; failing to adequately prepare and investigate for the defense of his client, not investigating, interviewing, and deposing witnesses, failure to properly litigate pre-trial motions he himself filed, failure to raise objections when requested by his client, failure to to file post-trial motion for proper review, failure to be supervised in accordance with the attorney's probation along with disclosing his being placed on probation. These violations of an accused's right to reasonably competent counsel caused other violations of justice the defendant's constitutional rights and facilitated a gross miscarriage of justice that should be reviewed in the interest of justice. These are as follows;

The trial appointed counsel E. Stephen Callaway Esq. failed to adequately prepare and investigate for a competent defense of his client. The movant understands that an attorney must only provide reasonably competent representation in the performance of his duties to assist an accused. Callaway failed to investigate, interview, and depose key witnesses when the accused informed counsel of the witness and the key portions of testimony were lost that they possessed. On 2-17-2000 Cousins contacted Callaway by written correspondence stating the witness had vital information and needed to be deposed. The accused specifically requested that the witness be deposed in order to preserve that testimony. The witness Mrs. Rosemary Hammond's testimony was not preserved and was effected by her having a stroke. Citing Strickland v. Washington 104 S.ct 1251 a two prong test must first be satisfied in order to prove ineffective assistance of counsel. These points are performance and prejudice. The accused offers that it fell below an objective standard for an attorney not secure depositions of testimony at the time of being informed of evidence which is benificial to the defense. And the prejudice which was suffered was that the witness' poor health affected her memory about certain testimony and did not allow the defense to locate, subpoena, and question other key witnesses. In order to prove that trial counsel's failure's denied pertinent and exculpatory testimony of other witness' first hand testimony to be presented to the triers of fact one only has to view the testimony of Rosemary Hammond, see pages B-114 through 119 of trial transcripts. Had the counsel investigated and deposed the original witness when informed of her coming faith, it is the position of the accused that could have secured a written record of the exculpatory statements and secondly would have known prior to trial testimony

of other parties whom were present. Counsel would have been able to have the other witness Liz Rogers present at trial. It was a further wrong for counsel not to request a continuance and/or proactively attempt to produce this witness for the exculpatory testimony. Due to the binds of incarceration it is not possible for the movant to locate and produce the witness Liz Rogers testimony at this time. In the interest of justice the attorney should have petitioned the court to secure the testimony to ensure a fair trial and avoid placing an innocent person in prison see U.S.C.A.6. The initial was the failure to interview and depose a known defense witness, compounded by the loss of probable exculpatory first hand testimony, of a subsequent witness. Which was allowed to further impede justice by the counsel's failure to produce this secondary firsthand testimony. This is a chain of ongoing wrongs which denied the accused a fair trial under U.S.C.A. 6. These wrongs are still continuing due to counsel and the courts failings to correct a gross miscarriage of justice. see D.L.R.P.C. 1.1, 1.2, and 1.3, A.B.A. Standards for Criminal Justice ch. 17 - 1.1 (b), Bange v. State 754 A.2d 871, Powell v Alabama 287 U.S. 45, U.S. v. Wade 87 S.ct. 1926, Stevens v. D.CC, 152 F.supp.2d 561.

When counsel replied to ineffective claims Callaway assert information and contentions which are confused with testimony of newly discovered testimony of Joan Mantes now re-married and Joan Pride. During the trial justices review on Post-conviction (T. Henley Graves) states "There is nothing offered as to what Liz Rogers testimony might have been or how it could have changed the outcome of the trial", however the movant asserts that the testimony of Rosemary Hammond at trial clearly states that the subject matter of the possibly exculpatory testimony and for an attorney or court not to attempt to assure that such "Brady Act" testimony when an innocent person stands to lose a substantial portion of their life being unjustly incarcerated constitutes a gross misconduct and ineffectiveness of counsel. This was not corrected by the court acting Sua Sponte and therefore denied the accused a fair trial under U.S.C.A. 6 also violating certain due process rights under U.S.C.A. 5, and is an ongoing miscarriage of justice and should also be reviewed for plain error. see D.L.R.P.C. 3 - 5.8, Delaware Constitution, U.S.C.A. 5, 14, and 6, and A.B.A. Standards for Criminal Justice. These violations denied the accused a fair trial by informed triers of facts due to the failures of counsel and court to defend and protect the constitutional rights of an accused. It is fundamentally wrong to allow any person to make allegations and refuse to allow an accused the right to have witnesses give exculpatory testimony which could prove innocence of the accused, bias or vendictiveness by the accuser, and motive to make such false accusations. see U.S. v. Cronic 466 U.S 648; Buehl v. Vaughn 166 F.3d 163, 172; Harris v. U.S. 614 A.2d 1277; Crandell v Bunnell 144 F.supp 1213; U.S. v. Decoster 624 F.2d 208; McQueen v Swenson 560 F.2d 959.

Counsel also failed to investigate and prepare for a defense and trial by failing to secure parental DNA testing profiles of Dunae Abney. The movant requested that appointed counsel obtain a copy of the DNA profiles held within parental testing results of a minor child shared by the accused and Ms. Abney. The reason for the requested material to be obtained was so as to identify the "unknown donor" of DNA

This requested material could only be realized as a need after receiving the DNA results and conclusions. The defendant wished to corroborate his statements to investigators that he had no relations with anyone other than Ms. Abney. In the initial audiotaped statement made by Mr. Cousins he indeed stated that there should be no reason for the discovery of evidence within the shorts but this was made during quick and intense questioning in which the accused operated on the assumption that his shorts he often wore around the house had either been a different pair or had probably been laundered since having intercourse with Ms. Abney. During transportation to S.C.I./Georgetown the accused amended the statement further explaining that Cousins and Abney had engaged in intercourse 3 days prior in the bathroom after taking a shower together. R. Hudson Det. D.S.P. stated that this was his reasoning for telephonically interviewing Ms. Abney the evening of Cousins arrest. Trial Counsel did not retrieve the paternity profiles as requested to identify the "Unknown donor", When questioned about this topic at trial and his failing to obtain it he stated he was certain the jury members would realize Cousins was nervous about even being accused of such acts during the audiotaped interview, and that the detectives statements for the interviewing of Ms. Abney as to the sexual relations with the accused should need no more expounding on in order to cause reasonable doubt. The movant understands that counsel is given a wide latitude about trial decisions, but however the petitioner hereby asserts that it was ineffective assistance of counsel for Callaway not to obtain independent DNA profiling to compare with the "Unknown donor" while the DNA expert was testifying, who is known to Cousins as Ms. Abney. Counsel should have retrieved such information under the Brady material, and to ensure that the jury is armed with all the facts to render intelligent and informed decisions. see DNA conclusions exhibited in appendix of exhibits; D.L.R.P.C. 1.1, 1.2(a), and 1.3; exhibits of trial transcripts B-202 through 204, B-54, B-69 and 70, B-74 through 76, and pages of preliminary hearing transcripts 12-19. Mr. Cousins requests were made to inform the jury of the reasoning for the existence of DNA at all and corroborate the identity as Ms. Abney. see memorandum of law filed pursuant to Del. Supr. Ct. Crim. R. 61, all briefs and decisions tendered; State v. Gilman 608 A.2d 660; miller v. State 309 F.supp. 1287; Van Nathan v. U.S. 357 F.rd 161; Gideon v. Wainwright 83 Sct 792.

The next question of law dealing with ineffective assistance of counsel deals with appointed trial counsel filing a motion in limine which included challenges of suggestive, leading, and coercive questioning by an improper and unqualified interviewer not being ruled on prior to trial. The first issue is with the difference to rule on the motion Callaway filed. Cousins asserts the claim that once a client makes a request for an objection unless it is illegal or unethical it is the duty of an attorney to actively pursue and litigate those objections. Cousins will exhibit motions and correspondences which will show the requested objections and the continuous requesting so therefore for counsel to not pursue these are a dereliction of his duty to advocate his clients interests under clearly settled laws, Rules, and Statutes both State and Federal. The videotaped deposition of testimony was being complained of in the motion in limine takes on significance when the difference to rule allowed the testimony to be; placed into evidence, made more egregious as it was allowed to be used in a prejudicial

manner that violated the constitutional rights of the accused. There were no entries on the docket of any good cause for defferances, therefore a proper hearing should have taken place. If not shown upon the record and not within any reply brief by Callaway the movant is curious how a justice other than the hearing justice could state "agreeing to postponement". In Mr. Callaway's reply brief he states "Mr. Richardson has been found by the court to have the qualifications necessary to question children who have been the alleged victims of sexual abuse". Then claims that a review of the C.A.C. tape indicated that the questioning wasn't improper and therefore wasn't argued. During the meeting with Cousins, Callaway stated he still intended to argue the improperness during a scheduled hearing, the date of that viewing was after the recently alleged differance. The obvious violations are readily apparent upon viewing the videotape which leads the movant to respectfully request that the reviewing justice or justices view the tape keeping in mind the arguments held within this and the past appeals. The question the movant poses here is do the reviewing parties see the odious violations held within the videotape; did they violate clearly settle laws, Rules, and statutes; and was it thereby an ineffective assistance of counsel for Callaway to fail to litigate and assert his and his client's objections? E. Stephen Callaway has failed in his reply to offer any case law or Statutes which qualify Mr. Richardson or any member of the C.A.C. while Mr. Cousins offered very specific laws such as 18 U.S.C. 3509 (h)(i) that clearly the C.A.C and therefore Mr. Richardson from performing such duties, for the purpose of being portrayed as sworn depositions of testimony. Because the videotape was preserved for use at trial and as evidence makes it a deposition. If the C.A.C. was doing an interview for pysological reasons it would have fallen within the defined scope of 3509 but when done in front of a camera for use as testimony supposedly sworn when in actuality no guarantees of truth are even remotely discussed. For these reasons shold be disqualified and should have been argued by Mr. Callaway. Its being allowed to be used in a prejudicial manner in a jurys deliberation to secure a conviction over direct recantations show's that the justice's decisions are blatantly wrong and thereby proffers that for counsel to fail to press foth with proper objections is below reasonable standards. see B. ndler v. U.S. 769 F.ed 595, 600; State v. Michaels 625 A.2d 489; U.S. v. Wade 87 S.ct 1926. These failures denied Cousins rights of Due Process under U.S.C.A. 5 and Fair Trial under U.S.C.A. 6.

As to claims and assertions about counsels failures to raise objections and questions whether those failures fell below a reasonable standard of performance denying his constitutional rights. The movant brings foth the following;

The movant requested that during the accused's trial, the client requested an objection be raised about the prosecutors "badgering of a witness" to the point the witness suffered a panic attack on the stand during their testimony. Although the movant raises the claim of ineffectiveness against Callaway because of his neglecting to assert his clients objections and concerns. The claim also show's that the prosecutors performance fell below reasonable standards. Because such behaviors by the litigators should have been

acted upon by the court Sua Sponte the acts should be reviewed for plain error, which does not and should not excuse an attorney not acting to protect the constitutional rights of his client and the witnesses in the interest of justice. Cousins asserts claims substantiated by the record on pages B-216 and 217 of the trial transcripts which will show that the trial justice quickly pushes past an initial attempt by counsel to make the objection requested by the accused. This behavior immediately led to a defense witness suffering an anxiety attack during their testimony. The claim of ineffectiveness stems from Callaway not contemporaneously making the objection as he was requested. To allow witnesses to be badgered in this type of manner denies the accused's right for a fair adversarial process and therefore a fair trial under U.S.C.A. 6. For a litigator to fail to protect these rights and the well being of defense witnesses falls well below reasonable standards of effectiveness and competency. see D.L.R.P.C. 1.1, 1.2, and 1.3, and A.B.A. Standards of Criminal justice 17-1.1(b), 5.6 and 5.8.

The movant also requested that counsel move for a continuance with regard to Janicia Thomas M.D. not giving her own testimony, accounts, and findings based upon [her] medical experience, expertise, and certainty. The Honorable T. Henley Graves states "witness was subpoenaed by the State but didn't appear because she hadn't been served", which is clearly not the truth. see exhibit of trial transcripts B-86 and 87. The [assisting] nurse whom by her own admission did not do any of the exam examination and was testifying about the secondary examination and couldn't keep any of the basic facts of the case correct. Therefore she shouldn't have been able to testify about another person's testimony without allowing for cross-examination of the first party witness testimony, and findings or conclusions of medical certainty. For this reason Cousins asserts claims that the prejudice suffered was that he was denied the opportunity to cross-examine critical portions which even the reviewing Superior Court justice realized and stated "the reddening of the labia" since the first examining physician Dr. Theresa Keller M.D. states "saw no redness". The nurse was not the examiner and was only present as a notetaker, but failed to be able to correctly read the notes she was taking about the basic facts and therefore would have been useless to question about the differences of exams. Mr. Callaway failed to act in a manner that protects the interest of his client by making objections about a second party or heresay testimony or requesting an asked for continuance to secure the first party. This denied the accused the right to cross-examine witnesses against him affecting his constitutional right to a fair trial under U.S.C.A. 6.

The next question of law dealing with the ineffective assistance of counsel pertains to the improper and faulty voir dire on competency of a witness. Cousins requested that counsel more extensively question the witness about the difference between the truth from a lie along with the duty to give accurate testimony. This would have avoided as the trial Justice stated "a stacked deck, loaded gun, loaded dice" and would have given a base of understanding about the witness' understanding of duty

to give truthful testimony if conducted in front of the jury. The prejudice which was suffered was that obvious false testimony was allowed to be presented to the jury without impeachment and the triers of facts not having an understanding that the witness stated she did not know the difference between the truth and a lie. see motions, briefs, and decisions rendered. See also Wheeler v. U.S. 16 S.ct 93; Stevens v. D.C.C. 152 F.supp. 561; McCall v. Cochert 657 A.2d 269.

The next question of law dealing with ineffective assistance of counsel is the failure of appointed counsel to raise objections about improper prosecutorial comments. It is the assertion that counsel should have acted in a reasonable manner of professionalism in order to protect the constitutional rights of the accused. The failure to act on this explored on direct appeal by Bernard O'Donnell in a motion that was produced without allowing the client to even review before its filing. During direct appeal the accused requested that appellate counsel raise other issues like those held in Binder v. U.S. 769 F.2d 595,600 which allowed for additional prejudices to make all the acts more egregious and add to the sum as a whole.

Another major claim deals with a "double edge sword" of the ineffectiveness of counsel and/or judicial misconduct concerning the failure to file and entertain a proper and timely motion pursuant to Del.Supr.Ct.Crim.R. 29(c). The assertion herein deals with the appointed counsels not filing a motion which was filed on 9-6-2000 with the court. This motion was filed for review within the required 7 day time limitation and included such claims as ineffective assistance, and the "Binder Issues". The justice found it necessary to send the motion to the same counsel being complained of, about the action's Callaway deemed appropriate, giving the attorney the option to deny a defendant proper and adequate review. This brings the movant to raise claims of ineffective assistance as Callaway failed to act on the legal wishes of a client once a justice sidelined proper review amounting to a judicial misconduct as well. A.B.A standards of criminal justice 5.6 and 5.8; and D.L.R.P.C. 1.1 through 1.4, and 8.4.

Finally the movant feels it necessary to raise the assertions that counsel failed to disclose vital information when directly questioned about his bad reputation and therefore denied the accused the right to make informed and intelligent decision about trial counsel and their representation. The accused directly asked Callaway about his reputation and inquired whether there was anything he should know about his ability to litigate. Callaway neglected to disclose that he was placed on probation seven days prior for ineffective assistance of counsel. This is gross misconduct, misrepresentation, and ineffective assistance as it directly effects the defendant's rights to make informed decisions about trial counsel and their representation. Trial counsel's direct supervisor was ordered as part of Callaway's probation to oversee and evaluate counsel's actions and communications which Karl Haller Esq. failed to do. Because counsel's actions (improper) and lack of proper actions violated several laws, rules, and statutes which set clearly settled and adopted standards and were

allowed to directly affect the defendant's constitutional rights and undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the convictions and should justify rendering a reversal of all ~~convictions~~ convictions and the vacating of all sentences imposed in the interest of justice.

Ground Ten

Newly discovered testimony leading to a request of an evidentiary hearing in the interest of justice pursuant to Del. Supr. Ct. Crim. R. 61 (i)(4).

Standard Scope of review

Pursuant to Del. Supr. Ct. Crim. R. 61 (i)(4), Newly discovered evidence which could not have been discovered by the movant with due diligence and therefore should be reviewed by the court De Novo during an evidentiary hearing to subpoena new witnesses and documents not available to the accused or public, (the record of statements made by complainant to agents of Department of Family Services), in the interest of justice.

Argument Ten

The movant has recieved two written correspondences from one Joan Manter-Pride of 509 A Marshall St, Milford Delaware 19963 which takes a great deal of the onus of this alleged crime off the shoulders of the accused and places it squarely on the shoulders of the alleged victims grandmother (Betty King). The accused had never met the new witness prior to recieving the letter nor had any knowledge of the existence of the testimony. The witness states in her letter that she was recently divorced because her husband would not let her come forth with her testimony. For these reasons it was impossible for the defendant to produce or subpoena the testimony by due dilligence. The Superior Court reviewing justice has the wrong impression from a sentence in the first letter where the witness mentions she would like to meet Mr. Cousins. It was accurate that Ms. Manter was recently divorced but at the time of the letter she was actively dating a man she has since married. Mrs. Pride now married again has periodically written to Mr. Cousins to keep him informed of any new or recent developements to include the developements mentioned within the second exhibited letter. During this recent letter she states the child was removed from the custody and care of Betty King, and during this intervention the minor child and complainant in this case made declarations that Betty King her grandmother was forcing her to make false allegations against others besides Mr. Cousins, see exhibits of correspondences and the perspective envelopes to show the dates recieved. For reasons of time constraints the petitioner felt compelled to include the newly discovered testimony into the motion pursuant to Del. Supr. Ct. Crim. R. 61 and now the instant case under 18 U.S.C. 2254. During the State's reply the attorney asserts a case which differs from the instant case as in the case asserted by the state there was other independent evidence of the party's guilt, as well in the case of Jones v State 599 A.ed 413 the alleged victim did not issue a direct recantation during her in court testimony. The affidavits in Jones also deal with what can be classified as Post-traumatic Stress Disorder night terrors where the testimony within Mrs. Pride's letters are offered for reasoning to held an evidentiary hearing about statements and findings to prove actual innocence of the accused. Nor during the case of Jones did the prosecutor use a videotaped deposition of testimony entering a jury's deliberation room to inflict prejudicial emphasis on the prior statements over the direct recantations held in the sworn in court testimony, in

order to secure a conviction. This leads the movant to request a review under Newly discovered evidence and also in the interest of justice under <u>18 U.S.C. 2254</u> in order to correct a gross miscarriage of justice. Further to develope these claims the movant wishes to respectfully request an evidentiary hearing where the movant would be able to subpoena necessary testimony and documents about any statements the alleged complainant may have made to the authorities at the Department of Family Services which would exonorate the accused and prove his innocence in this matter and assist this honorable court in rendering a fair review in the interest of justice.

Conclusion

Now comes the movant who prays that this honorable court, in light of the constitutional and Statutory violations housed within this motion and the past requests for review, will review the grounds each on its own merits and the precident cases which show the higher courts opinions and rulings on the violations. These mirror image cases are U.S. v. Binder 769 F.2d 595, 600; and State v. Micheals 625 A.2d 489, especially Binder. Cousins respectfully requests that this court might also allow an evidentiary hearing to show the Newly discovered testimony and allow the movant the oppertunity to show as stated in the last ground his actual innocence by allowing the movant to subpoena to the court documents and witnesses otherwise unable to be obtained by the public information act. Cousins also requests that his conviction be set aside and reverse the Superior Court's findings of guilt while also remanding back to the Superior Court for the dismissal of all charges and/or a new trial.

Date: April 7, 2005

Respectfully Submitted,

Daniel R Cousins #425626